[No. 14539. In Bank. — September 22, 1891.]

MARY ELIZA JOHNSON HOWELL, PETITIONER, *v.*
JOSEPH H. BUDD, JUDGE OF THE SUPERIOR
COURT, ETC., RESPONDENT.

ESTATES OF DECEASED PERSONS — PROBATE LAW — APPLICATION FOR LETTERS
BY CHILD OF DECEDENT — ADJUDICATION OF HEIRSHIP.— Upon an ap-
plication for letters of administration, where the right of the petitioner
to administer is contested, her right thereto depending solely upon the
issue as to whether or not she is the child of the deceased, the judgment
of the court upon the hearing of the petition, if not reversed upon appeal,
is a determination for all time and in all courts, as far as the parties to
the proceeding are concerned, as to whether or not she is the child of the
deceased, and therefore entitled to all of the estate, to the exclusion of
kindred of the collateral line, or whether the collateral kindred are next
in succession, and entitled to the estate.

ID. — CONSTRUCTION OF CODE — JUDGMENT RESPECTING ADMINISTRATION —
MATTERS INVOLVED. — The fair and legitimate interpretation of section
1908 of the Code of Civil Procedure is, that a judgment or order respect-
ing the administration of an estate is conclusive as to all matters directly
involved in the judgment or order.

DISQUALIFICATION OF JUDGE — RELATIONSHIP TO "PARTY" — CONSTRUCTION
OF CODE. — The word "party," as used in section 170 of the Code of Civil
Procedure, providing that no judge shall act as such in any proceeding
"when he is related to either party by consanguinity or affinity within
the third degree," is not confined to those who are parties to the record
by name, but includes all persons whose interests are represented by
parties to the record.

ID. — EQUITABLE INTEREST OF ATTORNEYS — SONS OF JUDGE — REPRESENTA-
TION BY PARTY TO RECORD — CONTEST OVER LETTERS OF ADMINISTRA-
TION.— The sons of a judge who, as attorneys, have contracted with an
administrator, who claims to be a nephew and heir of the decedent, to try a
contest upon a petition for revocation of his letters of administration, and
for issuance of letters to an alleged daughter of the decedent, who claims
the entire estate as sole heir, and who have agreed to receive an interest
in the estate, if successful, as their fee therefor, are the equitable owners
of such interest, and are represented by a party to the record within the
meaning of section 170 of the Code of Civil Procedure, and the judge is
therefore disqualified to hear and determine the contest.

APPLICATION to the Supreme Court for a writ of pro-
hibition. The facts are stated in the opinion of the
court.

*Baldwin & Campbell,* and *Pillsbury, Blanding & Hayne,*
for Petitioner.

The sons of the judge hold a contract for a share of
the estate, and are therefore the equitable owners of such
share. (*Willis* v. *Wozencraft,* 22 Cal. 616; *Love* v. *Wat-
kins,* 40 Cal. 565; 6 Am. Rep. 624; *Hoffman* v. *Vallejo,* 45
Cal. 564.) Such equitable interest is the real and bene-
ficial ownership of the property. (1 Pomeroy's Eq. Jur.,
secs. 105, 368; 2 Story's Eq. Jur., sec. 790; *Watson* v.
*Sutro,* 86 Cal. 527.) The determination of the question
as to which of the parties are the next of kin, on the
petitioner's application for letters, will be conclusive
upon her in subsequent proceedings in the estate, and
therefore the equitable estate of the judge's sons will be
bound likewise. (*Garwood* v. *Garwood,* 29 Cal. 515; *Cau-
jolle* v. *Ferrie,* 13 Wall. 474; 1 Greenl. Ev., secs. 523,
550.) The term "party" includes all persons who are
represented by the parties and claim under them or in
privity with them, as well as all those directly interested
in the subject-matter. (*Hodde* v. *Susan,* 58 Tex. 389;
*Schultze* v. *McLeary,* 73 Tex. 92; *Hall* v. *Thayer,* 105 Mass.
223; 7 Am. Rep. 513; *Fredericks* v. *Judah,* 73 Cal. 608.)
The provisions of section 170 of the Code of Civil Pro-
cedure should be liberally construed, with a view to
effect its objects and promote justice. (Code Civ. Proc.,
secs. 4, 1866; *North Bloomfield Co.* v. *Keyser,* 58 Cal. 322;

*Horton* v. *Howard,* 79 Mich. 647; *Hall* v. *Thayer,* 105 Mass. 223; 7 Am. Rep. 513; *Stockwell* v. *Township Board,* 22 Mich. 350.)

*Joseph H. Budd, in pro. per.,* for Respondent.

At common law a judge was disqualified if a party to an action, or if he had a direct interest therein, but he was not disqualified by reason of being a relative to a party to the action. (*Townsend* v. *Hughes,* 2 Mod. 151; *Miller* v. *Taylor,* 4 Burr. 2303, 2411; *Matter of Dodge etc. Mfg. Co.,* 77 N. Y. 101, 112; 33 Am. Rep. 579; *Russell* v. *Belcher,* 76 Me. 501.) In this state the statute provides that the judge shall not sit or act in any action or proceeding to which he is a party or in which he is interested. (Code Civ. Proc., sec. 170.) The interest which disqualifies a judge does not extend to cases where the interest is simply in some question or questions of law involved in the controversy, or when it is indirect or remote. (*North Bloomfield G. M. Co.* v. *Keyser,* 58 Cal. 323.) An executor or administrator is not, as such, a party to the proceedings for the distribution of an estate of a deceased person (see *Estate of Wright,* 49 Cal. 550; *Pearson* v. *Pearson,* 46 Cal. 635; *Roach* v. *Coffey,* 73 Cal. 282; *Estate of Marrey,* 65 Cal. 287), although, in respect to letters of administration, the decree granting such letters, while unreversed, is conclusive as to the right to such letters. (Code Civ. Proc., sec. 1908, subd. 1.) And such letters of administration are not evidence in the United States courts to show the death of the person of whose estate such letters were granted. (*Mutual Benefit Ins. Co.* v. *Tisdale,* 91 U. S. 238.) Yet this court, in its recent decisions rendered since the enactment by the legislature of the provisions of the code declaring the effect of a grant of letters of administration, has carefully avoided giving any intimation as to what effect the granting of letters of administration would have in proceedings for a final distribution of an estate. (*Estate of Pico,* 56 Cal. 420.) As an administrator simply holds the estate in trust, and is not required, when applying

for letters, to give notice of his claim and right to such letters, and the interest of an estate usually requires that letters of administration be issued without delay, and the only matters required to be proven (except in case of a contest) to entitle a person to a grant of letters are the jurisdictional facts (Code Civ. Proc., secs. 1371, 1365, subd. 10), the grant of letters is therefore evidence of nothing but the right of the person to whom the letters are issued to such letters. If evidence of any other matter, they must be conclusive evidence of such matter. (*Mutual Benefit Ins. Co.* v. *Tisdale,* 91 U. S. 238.) But as the code has not provided that the grant of letters shall be conclusive evidence on questions of heirship, such grant is not evidence as to heirship. (See *Gridley* v. *Boggs,* 62 Cal. 203; Code Civ. Proc., sec. 1978.)

GAROUTTE, J.—This is an application for a writ of prohibition to restrain the respondent, who is one of the judges of the superior court of San Joaquin County, from acting as judge in the matter of the application of the petitioner herein for the revocation of letters of administration issued to one Eugene Kay, upon the estate of William B. Johnson, deceased, and for her own appointment as administratrix in the place and stead of said Kay.

For the relief desired, petitioner relies upon the following allegations of her petition:—

"1. That the sons of the respondent (in conjunction with two other attorneys) have a contract with and from said Kay and other alleged heirs for the conveyance of one fourth of the said estate to them, when petitioner is declared to have no title therein, and said title shall be adjudged to be vested in said heirs.

"2. That the administrator, Kay, is a grand-nephew of the deceased, and claims that, as such, he and the other collateral kindred are entitled to the estate.

"3. That petitioner is the only child of the deceased, and, as such, is entitled to the whole estate, and also entitled to letters of administration (though a married woman), by virtue of an act of the legislature of 1891.

" 4. That upon the hearing of petitioner's application for letters of administration, the question at issue will be, whether she is the child of the deceased or not. The administrator and other alleged heirs say she is not; and if it be decided that she is the child of the deceased, she is entitled to letters of administration and to the whole of the estate; but if she is not such child, she is entitled to nothing, and said Kay and other heirs are entitled to the estate."

As shown by the verified answer of respondent, which must be taken as true, as far as the consideration of questions of law are involved, the objection to respondent hearing the matter and the application for transfer of the cause was made as follows:—

"That thereafter, and on the seventh day of June, 1891, F. T. Baldwin, Esq., and E. S. Pillsbury, Esq., who had long been on terms of intimate friendship with respondent, made a friendly call on respondent, and during said call and a conversation with respondent thereat, Mr. Pillsbury stated to respondent, in substance, that he deemed he ought to inform respondent that their client, Mrs. Howell, the petitioner herein, objected to said matter being heard before respondent as judge of the court, because of the relationship between respondent and James H. Budd and John E. Budd, two of the attorneys for Mr. Kay, and suggested that respondent request one of the judges of the superior court in and for the city and county of San Francisco to hear and determine the matter. In reply to this, respondent stated, in substance, that his associate on the bench, Judge Smith, and respondent would not request any other judge to hear and determine any matter which they could hear and determine, and that the rules of the court respecting the apportioning of the business of the court among the judges thereof would not be departed from to suit the wishes of any litigant, and that the matter being in department 1 of the court, it would be heard and determined by respondent as judge; and respondent denies that said petitioner and affiant ever, in any way or manner, called

the attention of this respondent to the alleged fact that said sons of affiant had a contingent interest in said estate of William B. Johnson, deceased, or in the result of said litigation, or to any disqualification of this respondent from acting as judge in said matter; and he denies that she ever in any manner, other than by said statement and suggestion of Mr. Pillsbury, at said friendly call on respondent, requested respondent not to act as judge in said matter, or to call in some qualified judge to act therein, and respondent denies that she ever in any way or manner, either directly or indirectly, requested respondent to transfer said matter to said department 2 of said court; on the contrary, he alleges that neither the petitioner nor either or any of her attorneys ever suggested to or requested of respondent that Judge Smith, one of the judges of said court, hear and determine said matter. Further answering, respondent admits that he refused, as above stated, said request of Mr. Pillsbury to have a judge of the superior court of San Francisco hear and determine said matter, and he admits that he stated to her attorneys, as above stated, in reply to the statement and suggestion of her attorney, Mr. Pillsbury, that said matter being in department 1 of the court, it would be heard and determined by the respondent as judge; but he denies that he otherwise informed her or her attorneys, or either or any of them, that he intended to act or would act as judge in said matter."

Under the authority of *Havemeyer* v. *Superior Court*, 84 Cal. 402, 18 Am. St. Rep. 192, the application to respondent for a transfer of the cause was clearly insufficient; yet we understand respondent, being desirous of an adjudication of the cause upon its merits, to have waived his objection to the course adopted by the petitioner in making her application for an order of transfer, and therefore we proceed to examine the cause upon the main questions involved.

It is insisted by petitioner that the respondent is disqualified from hearing her application to have the letters

of administration heretofore issued to one Kay revoked, and herself appointed as administratrix in the estate of said Johnson, deceased; and this matter is to be decided in the light of subdivision 2 of the following section of the Code of Civil Procedure: —

"Sec. 170. No justice, judge, or justice of the peace shall sit or act as such in any action or proceeding, — 1. To which he is a party, or in which he is interested; 2. When he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of law."

At the very threshold of this examination, in order that we may intelligently consider the question as to who are parties to this proceeding in the lower court, we must ascertain what will be the force and effect of the judgment of that court denying or granting petitioner's application as considered with reference to subsequent proceedings in the estate, and especially as considered with reference to the decree of distribution. In this estate, as alleged in the petition, the right of petitioner to administer depends solely upon the fact as to whether or not she is the child of deceased; that is the issue in the case. No exercise of discretion is allowed; the inquiry becomes a matter of legal right, and is, by the express provision of the statute, to be determined by the right of succession; and if the determination of that issue upon this hearing is to be conclusive upon her at final distribution, then this application for letters assumes a far more serious aspect, for it practically determines at the very inception of the probate proceedings who is to receive the residue of the estate upon final distribution, and places the respondent in the exact position as though he were proceeding to hear the petition for distribution rather than an application for letters of administration. In section 550 of Greenleaf on Evidence, we find the following: "And if the grant of administration turned upon the question as to which of the parties were next of kin, the sentence or decree upon that question is conclusive everywhere, in a suit between the

same parties for distribution." In the case of *Caujolle*
v. *Ferrie*, 13 Wall. 474, a case in all respects involving
the principles under discussion here, the supreme court
of the United States, after an exhaustive review of the
English authorities upon the question, said: " It may
therefore, as the result of these authorities, be safely
assumed to be the established law in England that if
the sentence of an ecclesiastical court in a suit for ad-
ministration turns upon the question of which of the
parties is next of kin to the intestate, it is conclusive
upon that question in a subsequent suit in the court of
chancery between the same parties for distribution."
And again: " On principle and authority, therefore,
the judgment in the suit for administration in New
York was pleadable in bar to this suit, and on that
ground alone the bill should have been dismissed."
If the judgment upon the issuance of letters of admin-
istration upon the question of heirship can be pleaded
as a bar to matters arising upon petition for distribution
in a court of concurrent jurisdiction, can there be a
doubt as to that judgment being a complete and perfect
bar in a proceeding in the very court that created such
judgment?

Passing to the law of this state, we find practically
this identical question carefully considered by this court
in the case of *Garwood* v. *Garwood*, 29 Cal. 514, where
the doctrine heretofore announced is fully approved and
declared to be the law of the land. Respondent insists
that the effect of the law found in *Garwood* v. *Garwood*,
29 Cal. 514, has been nullified by the following provis-
ion of section 1908 of the Code of Civil Procedure: " In
case of a judgment or order against a specific thing, or
in respect to the probate of a will, or the administration
of the estate of a decedent, . . . . the judgment or order
is conclusive upon the title to the thing, the will, or ad-
ministration." The fair and legitimate interpretation
of this provision is, that a judgment or order respecting
the administration of the estate is conclusive upon the
administration as to all matters directly involved in

such judgment or order. There seems to be nothing in the provision detracting in any degree from the force and effect of the principles laid down in the case of *Garwood* v. *Garwood*, 29 Cal. 514, but rather the provision seems to be in complete consonance and full accord with it.

We conclude, therefore, that the judgment to be rendered by the court upon the hearing of petitioner's application for letters of administration (subject to appeal) will determine for all time and in all courts, as far as the parties to the proceeding are concerned, whether the petitioner is the child of said Johnson, deceased, and therefore entitled to all of his estate, to the exclusion of kindred of the collateral line, or whether Kay, the administrator, and other collateral kindred are next in the direct line of succession, and entitled to the whole of the estate of said deceased.

What is the interest of the sons of respondent in this estate? The allegation of the petitioner is: "That said Kay and the other said next of kin after this petitioner have made a valid agreement with James H. Budd, Esq., John E. Budd, Esq., and Messrs. Nutter and De Vries, all of whom are attorneys at laws, that they shall have one fourth of said estate *in case and upon condition* that the said question of the heirship of this petitioner and affiant be determined adversely to her and in favor of said Kay and said other next of kin." It seems these parties have a contract for a share of the estate, which consists of real and personal property, and which share is contingent upon the nature of the judgment to be rendered upon the hearing of the application for letters of administration; which matter respondent threatens to hear and determine, and whose threatened acts in that regard this very proceeding is inaugurated to restrain and forbid. These parties will be the owners of a perfect equitable title to one fourth of the estate upon the happening of a condition, and that condition is dependent upon the act of respondent. To the extent of the investigation of the questions pending before us, the

conditional equitable interest of the sons of respondent in this estate is clothed with all the dignity, importance, and value of a vested and absolute interest; for it is in the power of the respondent to create the condition, and thus create a perfect equitable estate.

It is assumed in the argument of respondent, although not found in the petition, that the consideration for this agreement was legal services to be performed by these attorneys *in futuro*, and he insists that until these services are performed, the sons of respondent have no interest in the estate. No principle of equity can be found to support such argument. In equity, from the time of the execution of the contract for the sale of land, the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase-money, becomes a trustee for the vendor. Such contracts, for most purposes, are deemed executed, upon the principle that courts of equity will regard substance rather than form, and thus assist the parties by extending to the agreement the effect desired and intended. Pomeroy, in his Equity Jurisprudence (vol. 1, sec. 105), speaking of such agreements, says: "The view which equity takes of the juridical relations resulting from the transaction is widely different. Applying one of its fruitful principles, that what ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a real right, a right of property in the land, which, though lacking a legal title, and therefore equitable only, is none the less the real beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid." This principle is fully recognized by the decisions of this court. (See *Willis* v. *Wozencraft*, 22 Cal. 616; *Love* v. *Watkins*, 40 Cal. 565; 6 Am. Rep. 624; *Hoffman* v. *Vallejo*, 45 Cal. 565; *Watson* v. *Sutro*, 86 Cal. 527.) In the case of *Hoffman* v. *Vallejo*, 45 Cal. 565, the court said, referring to a contract similar to the one respondent alleges this to be: "The agreement of September, 1865, constituted Hoffman and the Wilsons

together the equitable owners, as against the defendant J. J. Vallejo, of the undivided half of whatever should thereafter result from the prosecution or compromise of the suit instituted against Clark."

Counsel for petitioner has argued with great learning that proceedings upon the application for letters of administration are in the nature of proceedings *in rem*, and therefore all persons interested are parties; but owing to the views we entertain upon the branch of the case already discussed, it will not be necessary to consider that question.

To hold that the word "party," as used in section 170 of the code, is confined to parties of record by name would be a construction so narrow as to find support neither in principle nor authority. To say that a judge would be qualified under this provision to try and determine an action in ejectment, brought by the administrator of an estate of which the children of the judge are the heirs, or that he could render judgment in a foreclosure suit where an administrator is defendant and the heir is a son of the judge, would be to sacrifice substance to form, and contrary to all principles of modern legal jurisprudence. In the case of *Fredericks* v. *Judah*, 73 Cal. 608, the court said: "Although in that action Mrs. Judah, as executrix, was plaintiff, it was an action between the same parties within the meaning of this provision, for the executrix represented the heirs therein." In the case of *Briggs* v. *Briggs*, 80 Cal. 255, it was held that a successor in interest was a "party" within the meaning of the provision that a deposition properly taken could be read in evidence in a subsequent action "between the same parties." In the case of *Schultze* v. *McLeary*, 73 Tex. 92, the court said that notwithstanding that the judge was not related to the party by name, yet that "if he was but the representative of his wife, who was so related, or if he was the representative of a right claimed by himself and wife in community, or if any judgment rendered in his favor or against him would affect the right of the wife

through her community rights, even to the extent of costs, then the wife of Orynski, within the spirit and purpose of the constitutional provision to which we have referred, *was a party to the suit,* and the district judge disqualified." (See *Hodde* v. *Susan,* 58 Tex. 389; *Gains* v. *Barr,* 60 Tex. 676; *North Bloomfield etc.* v. *Keyser,* 58 Cal. 322.) In *Stockwell* v. *Township Board etc.,* 22 Mich. 350, Justice Graves said: "The court might not be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application."

The code provides that its provisions "are to be liberally construed, with a view to effect its objects and to promote justice." (Code Civ. Proc., sec. 4.) And again, "when a statute or instrument is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to be adopted." (Code Civ. Proc., sec. 1866.) These provisions of the code, taken in connection with the authorities cited, indicate that section 170 is to have no technical or narrow construction, but is to be broadly applied to all litigation, where a judge is called upon to adjudicate property rights. We conclude, therefore, that the word "party," as used in section 170, is not confined to the parties to the record by name, but includes all persons represented by parties to the record.

Are the sons of the respondent represented by a party to the record? It seems unnecessary to examine into the question as to the relations existing between the administrator and the heirs, for the administrator himself is one of the heirs, and is a grantor under the agreement to convey to the sons of respondent. While he is not the sole grantor, that fact is immaterial, for the disqualification results from the *kind* of interest held by the sons, and not from the amount of interest. Their ownership of a portion of the estate is as disqualifying as if they owned it in entirety. As petitioner's right to the estate will be conclusively determined upon the hearing of her application for letters

as far as the parties to that proceeding are concerned, and as Kay, the administrator, is a party to that proceeding, and has contracted to convey to the sons of respondent an interest in the estate, and as, therefore, he is the trustee of said sons for such interest, and as they are the equitable owners thereof, they are as fully and completely represented by the administrator, Kay, in that proceeding as any beneficiary can be represented by his trustee.

Respondent alleges in his answer that he has no information or belief upon the subject sufficient to enable him to answer the allegation in said petition and affidavit "that said Kay and the other of said next of kin after this petitioner and affiant have made a valid agreement with James H. Budd, Esq., and John E. Budd, Esq., and Messrs. Nutter and De Vries that they shall have one fourth of said estate in case and upon condition, etc., and therefore he denies said allegation." Petitioner objects to the sufficiency of the foregoing denial to create an issue, but inasmuch as respondent, in his brief, sets out that since the oral argument he has received information that will enable him to make a specific denial of the allegation, and asks to amend his answer in that regard, which application we are disposed to grant, it becomes unnecessary to pass upon the merits of petitioner's contention in this respect.

The demurrer to the petition will be overruled, and the respondent will be allowed five days after service of a copy of the order thereof to file an amended answer in accordance with his request.

DE HAVEN, J., HARRISON, J., PATERSON, J., and BEATTY, C. J., concurred.