Vincent A. BILOTTI et al.

v.

A. Norman LaSALLE, Administrator of the Estate of Nicola Bilotti et al.

No. 83–357–Appeal.

Supreme Court of Rhode Island.

March 26, 1986.

John P. Garan, Providence, for plaintiff.

Anthony DiPetrillo, Providence, for William Fiore.

John J. McElroy, Providence, for Norman LaSalle.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal taken by the plaintiffs from a judgment of the Superior Court granting the defendants' motion to dismiss the plaintiffs' appeal from a decree of the Cranston Probate Court on the grounds that the plaintiffs were not aggrieved parties in interest and did not have standing and that the issue of who were the lawful heirs was res judicata.

The defendant William Fiore was born Francesco Badessa on November 29, 1925, to Anna Badessa. There is no father named on his birth certificate. Subsequent to the birth of her son, Anna Badessa entered into a marital agreement with Nicola Bilotti on December 31, 1925, which document was recorded on April 28, 1926, in the records of Providence City Hall. Anna Badessa testified before the Cranston Probate Court that she and defendant lived with Nicola Bilotti until April 11, 1928, when she filed a petition for divorce in the Superior Court. A final decree of divorce was entered on September 4, 1929. Before this time, Nicola and Anna Bilotti filed a petition to change defendant's name to William Bilotti on December 28, 1928. Thereafter on July 27, 1943, William Bilotti changed his name to William Fiore, defendant's present name.

Nicola Bilotti died on April 7, 1977, survived by his wife, Egle Santopadre, who

subsequently died during the course of this matter on January 21, 1981. The plaintiffs, Salvatore Bilotti, Vincent Bilotti, Enrico Bilotti, and Chiara Bilotti filed a petition for administration on April 12, 1977, naming themselves heirs at law of their brother's estate. The defendant attempted to exercise his right as legal heir and filed a motion to amend the petition for administration on May 17, 1977, thereby deleting plaintiffs' names and substituting his own name. During the hearing on the motion, defendant presented the following documents into evidence to establish his legitimacy and his right to inherit from his father's estate:

(1) a copy of the birth certificate of Francesco Badessa (William Fiore); (2) a copy of the baptism certificate of Francesco Bilotti, son of Nicola Bilotti and Anna Badessa; (3) a certificate of First Holy Communion of William Bilotti, child of Nicola Bilotti and Anna Badessa; (4) a marriage agreement between Nicola Bilotti and Anna Badessa dated December 31, 1925 and recorded on April 28, 1926 in the City of Providence; (5) a petition for change of name by Nicola and Anna Bilotti on behalf of their son, requesting his name be changed from Francesco Badessa to William Frances Bilotti; (6) a petition for change of name by William F. Bilotti requesting his name be changed to William F. Fiore, with the consent of his parents, Anna Fiore and Nicola Bilotti; (7) a petition for divorce and the final decree of divorce of Anna and Nicola Bilotti, granting custody of the minor child, William Bilotti to Anna Bilotti; and (8) Providence School Department records of William Bilotti showing Vincent Fiore as stepfather as a result of the marriage between Anna Bilotti and Vincent Fiore, with whom William Bilotti lived.

After the hearing, wherein Anna (Bilotti) Fiore testified and was cross-examined, the Probate Court granted defendants' amended petition on May 26, 1977.

The plaintiffs did not take an appeal from this decision.

Subsequently in June, a hearing was held on the petition for administration of defendant A. Norman LaSalle. The plaintiffs contested LaSalle's suitability as administrator and argued that preference should be given to the next of kin pursuant to G.L.1956 (1969 Reenactment) § 33–8–8. Relying on this statute, plaintiffs suggested the appointment of Vincent Bilotti. After a hearing, the Probate Court decided on June 24, 1977, that the appointment of LaSalle that was made upon the recommendation of Egle Santopadre and defendant Fiore was appropriate. The plaintiffs appealed this decision which appeal was later dismissed without prejudice by agreement of the parties.

On April 14, 1983, LaSalle filed a first and final account in the Probate Court to which plaintiffs filed an objection. The defendants contested plaintiffs' appearance in the matter on the basis of a lack of standing since they were not aggrieved parties in interest. The defendants further argued that the Probate Court decree of May 26, 1977, was res judicata on the heirship issue.

On appeal, plaintiffs raise several issues. However, because one of the issues is dispositive of the case, we shall address only that issue. The sole issue to be considered is whether a decree of the Probate Court granting a petition for administration conclusively determines the issue of heirship.

The plaintiffs contend that the probate hearing on defendants' motion to amend the petition for administration did not resolve the heirship issue and that therefore the doctrine of res judicata does not apply. In support of their contention, plaintiffs cite *Hopkins v. Treasurer & Receiver General*, 276 Mass. 502, 177 N.E. 654 (1931), where the court held that heirship is not determined on a petition for administration, rather it is determined during a proceeding for final account and distribution

of the assets. The defendants argue that at the probate hearing, which lasted for several days, evidence was submitted and witnesses were presented in order to show that defendant was the lawful heir of the Bilotti estate. Furthermore, defendants state that plaintiffs are barred from relitigating this issue since it was raised and argued by both parties and a final decree was entered.

The question of whether a decree appointing an administrator is res judicata with respect to the rights of inheritance or succession is one of first impression in this jurisdiction; however, it has been addressed in other jurisdictions, including the United States Supreme Court. *See Caujolle v. Ferrie,* 80 U.S. (13 Wall) 465, 20 L.Ed. 507 (1871); *Blackburn v. Crawfords,* 70 U.S. (3 Wall) 175, 18 L.Ed. 186 (1865); *In re Scott's Estate,* 90 Cal.App.2d 21, 202 P.2d 357 (1949); *Weaver v. Meyer,* 32 Ind. App. 587, 70 N.E. 409 (1904); *In re McGoughran,* 124 App.Div. 312, 108 N.Y.S. 934 (1908); *Kane v. Kane,* 146 Ohio St. 686, 67 N.E.2d 783 (1946). The two most important considerations in this area of inquiry are: (1) whether the persons against whom the judgment or order is sought to be held conclusive were parties or were in privity with the parties to that proceeding; and (2) whether the issue was litigated and directly decided in the proceeding for the appointment or whether it was merely a collateral issue and only incidental to the grant of administration. *Caujolle v. Ferrie,* 80 U.S. (13 Wall) 465, 20 L.Ed. 507 (1871); *Blackburn v. Crawfords,* 70 U.S. (3 Wall) 175, 18 L.Ed. 186 (1865); *Howell v. Budd,* 91 Cal. 342, 27 P. 747 (1891). In *Estate of Harrington,* 147 Cal. 124, 128–29, 81 P. 546, 548 (1905) the court stated that:

"where an issue of fact vital to the controversy has been tried between parties litigant, and a judgment depending for its sufficiency upon the finding of fact has become final, that determination of fact is forever binding in every court between the parties to that litigation and their privies."

■ Applying this criterion to the case at bar, plaintiffs were present at the hearing on the motion to amend the petition for administration and contested the substitution of defendant Fiore's name for plaintiffs' names as legal heirs. Anna (Bilotti) Fiore and defendant Fiore testified and were cross-examined by plaintiffs' counsel. Unfortunately, we do not have before us the record of the probate hearing; however, we do have the order of the Probate Court and the word of both counsel that the issue of defendant's legitimacy was litigated. Therefore, although the Probate Court did not make a specific finding of fact regarding defendant's heirship status, we can conclude, relying on the above, that such a determination was made.[1] The issue of defendant's legitimacy was not a collateral matter, rather it was a necessary determination in the grant of administration.

■ Upon a petition for administration the legal heirs are named in order that an administrator may be appointed therefrom. Preference is accorded to the surviving spouse and one or more of the next of kin. Section 33–8–8. In describing the essence of this probate procedure the court in *Howell v. Budd,* 91 Cal. at 348, 27 P. at 748 stated in dicta that:

"the inquiry becomes a matter of legal right, and is, by the express provision of the statute, to be determined by the right of succession; and if the determination of * * * [legitimacy] upon this hearing is to be conclusive * * * at final distribu-

---

**1.** Much litigation might have been avoided in this case if the Probate Judge had clearly indicated his findings of fact and conclusions of law in a decree adapted specially for that purpose. Although printed probate forms are used widely in the Probate Court, this does not preclude the articulation of a specific decree under circumstances when findings of fact and conclusions of law should be stated with more completeness than a probate form of decree would furnish.

tion, then this application for letters [of administration] assumes a far more serious aspect, for it practically determines [at] the very inception of the probate proceedings who is to receive the residue of the estate upon final distribution, and * * * [changes the proceeding to a] petition for distribution rather than an application for letters of administration."

When the Probate Court granted the amendment to the petition for administration, the result was more than just a change of the parties. The probate decree was a final determination of the heirship issue from which an appeal could have been taken. Section 33–23–1.

Section 33–23–1 allows an appeal to the Superior Court by "[a]ny person aggrieved by an order or decree" of the Probate Court if filed within forty days of the entry of the order or decree. Instead of filing an appeal from the May 26, 1977 decree, plaintiffs took no further action until 1983 when they filed objections to the administrator's first and final account. As a result of plaintiffs' failure to take a timely appeal, the order of the Probate Court became res judicata in all subsequent proceedings between the parties. *See Eckilson v. Greene*, 61 R.I. 394, 398, 1 A.2d 117, 119 (1938).

The plaintiffs' reliance on *Hopkins v. Treasurer & Receiver General*, 276 Mass. 502, 177 N.E. 654 (1931), is misplaced. In that case, if the plaintiffs, who were determined not to be the heirs of the decedent by the Probate Court, were foreclosed from raising the issue again at the final distribution stage, then the decedent's property would escheat to the state. This is not the situation in the case before us. Here we have a legitimate heir, the son of the decedent, who is rightfully entitled to inherit from his father's estate having sufficiently proven his legitimacy in the Probate Court. We conclude therefore that the determination of defendant's legitimacy by the Probate Court on a petition for administration

is res judicata and bars the plaintiffs from asserting any right to their brother's estate in the proceedings for final distribution.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings consistent herewith.